UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANKUNITED, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-00746 |
| ) | |
| ACQUEST TITLE SERVICES, LLC, ) | |
| an Illinois limited liability company, ) | |
| ) | |
| <u>serve at:</u> ) | |
| Daniel T. Frommeyer, Registered Agent ) | |
| 111 North Ave., Suite 102 ) | |
| Barrington, IL 60010 ) | |
| ) | |
| and ) | |
| ) | |
| NOREEN T. BURGESON, ) | |
| an individual, ) | |
| ) | |
| <u>serve at:</u> ) | |
| 357 Deepwood Road ) | |
| Barrington Hills, IL 60010 ) | |
| ) | |
| and ) | |
| ) | |
| JOHN B. BURGESON, ) | |
| an individual, ) | |
| ) | |
| <u>serve at:</u> ) | |
| 357 Deepwood Road ) | |
| Barrington Hills, IL 60010 ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

This is the Complaint of Plaintiff BankUnited, N.A. ("BankUnited"), against Defendants

Acquest Title Services, LLC ("Acquest"), Noreen T. Burgeson ("Noreen"), and John B.

Burgeson ("John").

1

29356719

**Parties, Jurisdiction and Venue**

1. BankUnited is a national banking association with its main office, as designated in its articles of association, in Florida. BankUnited is deemed to be located in Florida and a citizen of Florida for purposes of diversity jurisdiction. 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).

2. Noreen is an individual domiciled in Kane County, Illinois, and is a citizen of Illinois.

3. John is an individual domiciled in Kane County, Illinois, and is a citizen of Illinois.

4. Acquest is a limited liability company organized under Illinois law with its principal place of business in Cook County, Illinois. Noreen and John are the members of Acquest. Accordingly, Acquest is deemed to be a citizen of Illinois for purposes of diversity jurisdiction. *Thomas v. Guardsmark*, LLC, 487 F.3d 531, 534 (7th Cir. 2007).

5. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because BankUnited is a citizen of Florida, Defendants are citizens of Illinois, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendants because they reside in Illinois and the claims in this case arise from their activities in Illinois.

7. Venue is proper in this District under 28 U.S.C. § 1391(a)(1) because Defendants reside in this District and, alternatively, under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions that give rise to BankUnited's claims occurred in this District.

**General Allegations**

8. Noreen and John are married. They are the owners and managers of Acquest. John is the president of Acquest. Noreen is the chief financial officer of Acquest.

9. Acquest operates a title insurance business and title agency and facilitates the transfer of other people's money for the purpose of conducting residential and commercial real estate transactions.

10. At all relevant times, Acquest maintained an escrow trust account at Citibank (the "Citibank Account").

11. In April 2021, Acquest, through Noreen and John, opened five demand deposit accounts with BankUnited (the "BankUnited Accounts"), including demand deposit account number 9855331216, designated by Acquest as "Escrow Trust Account" (the "BankUnited Escrow Trust Account").

12. When Defendants opened the accounts at BankUnited, Defendants provided BankUnited with Acquest's bank account statements at Citibank, which reflected that Acquest had an average monthly balance of more than $20 million and daily highs around $50 million in its accounts at Citibank.

13. Upon opening the accounts at BankUnited, Noreen and John, acting on behalf of Acquest, executed a Master Signature Card Agreement, a true and accurate copy of which is attached as Exhibit 1.

14. The Master Signature Card Agreement provides that Noreen and John "apply for a Master Account on behalf of Acquest…. [Acquest] desires to open deposit accounts with BankUnited … without the necessity of executing new signature cards for each account…. This Master Account and all Sub-Accounts will be opened in accordance with the terms of this

29356719

Agreement and the terms and conditions set forth in [BankUnited's] applicable disclosure statements and agreements and schedule of fees governing such Accounts, as amended from time to time ('Rules'). [Acquest] acknowledges and agrees: (1) that [Acquest] has received a copy of the applicable Rules and agrees to be bound by the Rules; … (3) that this Agreement shall govern all accounts, products and services opened or requested to be opened under this Agreement." Ex. 1.

15. Upon opening the accounts at BankUnited, Noreen, acting on behalf of Acquest, executed a Banking Powers Resolution, a true and accurate copy of which is attached as Exhibit 2.

16. The Banking Powers Resolution states, in part, that Acquest "agrees to be bound by all rules and regulations set forth in [BankUnited's] applicable disclosure statements, agreements and schedules of fees, as same may be amended from time to time, of other agreement received by [Acquest] from [BankUnited] with the same force and effect as if each and every term thereof were set forth in full herein and made a part thereof."

17. The terms of Acquest's accounts at BankUnited are governed by a Depositor's Agreement, a true and accurate copy of which is attached as Exhibit 3.

18. The Depositor's Agreement provides: "If we cash a check or other item for you or credit it to your account and it is not paid for any reason, we may charge your account for the amount of the check or other item, plus a fee as set forth in the Schedule of Fees applicable to your account, even if this causes your account to become overdrawn. All deposits are subject to our subsequent verification and adjustment, even if you have already withdrawn all or part of the deposit." Ex. 3, p. 7.

19. The Depositor's Agreement provides: "Credits for all deposits are subject to final verification and we may make adjustments to your account for any errors, including errors appearing on your deposit ticket. The availability of funds for withdrawal does not mean that the deposited check or item is 'good' or has 'cleared', or has been paid by the paying bank, or that the item will not be returned unpaid and your account subsequently debited, notwithstanding the passage of any period of time or any representation or belief to the contrary." Ex. 3, p. 8.

20. The Depositor's Agreement provides: "In receiving checks or other items for deposit or collection, we act only as your collection agent and assume no responsibility beyond the exercise of ordinary care…. Although we may credit your account for the amount of any item, this credit is temporary until we receive final payment in cash or other manner acceptable to us. We may reverse any temporary credit." Ex. 3, p. 8.

21. The Depositor's Agreement provides: "If a check, draft or other item including, without limitation, substitute check, ACH entry or other funds transfer is deposited to or cashed against your account and (1) the paying bank returns it to us unpaid; …, we may pay the return or demand, and subtract the funds from the balance in your account or other accounts for which you are an owner, or charge part of the item to each, even if you have already withdrawn the funds and regardless if such return or dishonor is timely." Ex. 3, p. 10.

22. The Depositor's Agreement provides: "You must immediately pay the amount of any overdraft together with any applicable fees or charges." Ex. 3, p. 14.

23. The Depositor's Agreement provides: "You certify that you will not use your account or any BankUnited service for any illegal transactions or activities, including, without limitation, those activities prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et seq. You further represent and warrant that all transactions initiated or

conducted by you are legal and not in violation of the Unlawful Internet Gambling Enforcement Act or any other law." Ex. 3, p. 18.

24. Check-kiting is a fraudulent and illegal practice in which the perpetrator plays the "float" in check processing and obtains the use of bank funds not belonging to the perpetrator by knowingly:

   a. drawing checks on an account with Bank A in which the perpetrator has insufficient funds to cover the checks;

   b. depositing the checks in an account with Bank B, which is credited with the amount of the deposited checks before they are paid by Bank A;

   c. drawing checks or other debit items on the account with Bank B when the account would lack sufficient funds to cover the items absent the previously-deposited checks drawn on the account with Bank A;

   d. depositing the new items drawn on the account with Bank B into the account with Bank A to cover the checks previously drawn on the account with Bank A before Bank A rejects payment of the checks for insufficient funds; and

   e. repeating this cycle (which include other banks).

Check-kiters essentially give themselves their own unauthorized and interest-free loan by tricking two or more banks into inflating account balances.

25. Defendants engaged in a check-kiting scheme involving Acquest's Citibank Account and its BankUnited Escrow Trust Account. In violation of law and in breach of Acquest's agreement with BankUnited, on several occasions between December 2022 and January 2023:

29356719

    a. Noreen, acting on behalf of Acquest, signed checks drawn on Acquest's Citibank Account and remotely deposited the checks into Acquest's BankUnited Escrow Trust Account when Defendants knew that the Citibank Account did not have sufficient funds to cover the checks;

    b. Defendants, using the funds immediately credited to the BankUnited Escrow Trust Account as a result of the checks, immediately wired funds from the BankUnited Escrow Trust Account back to the Citibank Account when Defendants knew that the BankUnited Escrow Trust Account did not have sufficient funds to cover the wire transfers absent the funds immediately credited to the BankUnited Escrow Trust Account as a result of the checks;

    c. Defendants thereby inflated the balance of the Citibank Account during the period of time (amounting to several days) between when the wired funds immediately posted to the Citibank Account and when the checks subsequently reached Citibank for payment; and

    d. Defendants attempted to cover the checks drawn on the Citibank Account before the checks reached Citibank for payment by repeating the cycle described above or by depositing funds from other sources into the Citibank account.

26. In effect, through their check-kiting scheme, Defendants repeatedly obtained unauthorized, interest-free, short-terms loans from BankUnited, the proceeds of which were deposited in Acquest's Citibank Account and subsequently withdrawn to: (a) pay for Acquest's business operations (and thereby keep Acquest afloat); and (b) upon information and belief, to pay for the personal expenses of Noreen and John.

27. Eventually, Defendants could not maintain the Citibank Account with sufficient funds, even with the wired funds from BankUnited to Citibank, and Citibank dishonored and returned numerous checks to BankUnited unpaid for lack of sufficient funds.

28. As a result of the unpaid checks drawn on Acquest's Citibank Account, Acquest's BankUnited Escrow Trust Account became overdrawn and currently has a negative balance of $2,519,855.22.

29. Defendants have admitted that they siphoned money from their check-kiting scheme to cover inappropriate expenses such as rent, insurance, and payroll. Upon information and belief, Noreen and John also siphoned money from this scheme for their personal benefit.

30. John knowingly aided and abetted Noreen in her wrongful conduct and knowingly received benefits from her wrongful conduct.

## COUNT I
### Breach of Contract – Against Acquest

31. BankUnited incorporates and realleges paragraphs 1-30.

32. Acquest's BankUnited Escrow Trust Account is currently overdrawn in the amount of $2,519,855.22.

33. BankUnited has demanded that Acquest pay the amount of the overdraft.

34. Acquest has breached the Depositor's Agreement by failing to pay the amount of the overdraft and by engaging in the check-kiting scheme.

ACCORDINGLY, BankUnited requests that the Court enter judgment in its favor and against Acquest for $2,519,855.22, prejudgment and postjudgment interest, costs, and all other relief to which BankUnited is entitled.

## COUNT II
### Fraud – Against All Defendants

35. BankUnited incorporates and realleges paragraphs 1-34.

36. Through their check-kiting scheme, Defendants fraudulently induced BankUnited to make funds available to Acquest to which Acquest was not entitled.

37. As a result of Defendants' check-kiting scheme, BankUnited has been damaged by at least $2,519,855.22.

38. BankUnited is entitled to punitive damages because Defendants' conduct was willful, wanton, and outrageous, and Defendants acted with fraud.

ACCORDINGLY, BankUnited requests that the Court enter judgment in its favor and against each Defendant, jointly and severally, for $2,519,855.22, prejudgment and postjudgment interest, punitive damages, costs, and all other relief to which BankUnited is entitled.

## COUNT III
### Illinois Uniform Fraudulent Transfer Act – Against All Defendants

39. BankUnited incorporates and realleges paragraphs 1-38.

40. Acquest has transferred some of its assets to Noreen and John: (a) with actual intent to hinder, delay, or defraud BankUnited, which is a creditor of Acquest; or (b) without receiving a reasonably equivalent value in exchange for the transfers, and Acquest (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of Acquest were unreasonably small in relation to the business or transaction, or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, including, but not limited to, Acquest's liability to BankUnited for the overdraft in the BankUnited Escrow Trust Account.

9

29356719

41. Since it overdrew the BankUnited Escrow Trust Account, Acquest has transferred some of its assets to Noreen and John without receiving a reasonably equivalent value in exchange for the transfers when Acquest was insolvent at the time of the transfers or became insolvent as a result of the transfers.

42. Since it overdrew the BankUnited Escrow Trust Account, Acquest has transferred some of its assets to Noreen and John for an antecedent debt when Acquest was insolvent at the time of the transfers and Noreen and John had reasonable cause to believe that Acquest was insolvent.

43. Under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.*, BankUnited is entitled to avoidance of the transfers, to an attachment of the transferred assets and other property of Noreen and John, an injunction against further disposition by Defendants of the transferred assets or their other property, and judgment against Noreen and John for the lesser of the value of the transferred assets or the amount of Acquest's liability to BankUnited.

ACCORDINGLY, BankUnited requests that the Court enter judgment in its favor and against Defendants for:

A. an order avoiding the transferred assets;

B. an attachment of the transferred assets and other property of Noreen and John;

C. an injunction against further disposition by Defendants of the transferred assets or their other property; and

D. judgment against Noreen and John, jointly and severally, for the lesser of the value of the transferred assets or the amount of Acquest's liability to BankUnited.

Respectfully submitted,

THOMPSON COBURN LLP


By /s/ William R. Bay
   William R. Bay, # 6181670
   Francis X. Buckley, Jr., # 6185143
   Jeffrey R. Fink, # 6226742
   55 East Monroe Street
   37th Floor
   Chicago, IL 60603
   P: 312 346 7500
   F: 312 580 2201
   wbay@thompsoncoburn.com
   fbuckley@thompsoncoburn.com
   jfink@thompsoncoburn.com

Attorneys for Plaintiff BankUnited, N.A.